UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HERBERT GRAY, | Civil Action No. 23-846(MCA) |
| Plaintiff, | |
| v. | OPINION |
| VICTORIA L. KUHN, ESQ., et al., | |
| Defendants. | |

This matter has been opened to the Court by Plaintiff Herbert Gray's filing of a Complaint asserting claims for relief pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). The Court previously granted Plaintiff's IFP application. At this time, the Court proceeds the Complaint in part and dismisses it in part pursuant to its screening authority under 28 U.S.C. §1915(e)(2)(B). The Court also addresses Plaintiff's request for pro bono counsel and his letter dated October 22, 2024.

I. <u>Screening Standard</u>

District courts must review complaints in civil actions in which a prisoner files suit against "a governmental entity or officer or employee of a governmental entity," and in actions where the plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a). District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2). When considering a dismissal for failure to state a claim on which relief can be granted, courts apply the same

standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## II.   DISCUSSION

Plaintiff is a convicted prisoner and was incarcerated at Northern State Prison at the time of the relevant incidents. (Complaint at 2-3.) He is currently incarcerated at South Woods State Prison. He brings ten "claims" for relief against the New Jersey Department of Corrections ("NJDOC") and prison officials at Northern State Prison. The Court liberally construes and addresses each of these claims below and considers his civil rights and disability discrimination claims separately. The Court does not construe the Complaint to raise any state law claims.

### a. Civil Rights Claims

To the extent Plaintiff brings any § 1983 claims against the NJDOC or against any individual Defendants in their official capacities for damages, the Court dismisses these claims with prejudice, as neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

In Claim One, Plaintiff alleges he is a legally blind inmate and is unable to write or file his own inquires or grievances. (Complaint at 17.) Plaintiff contends that he is reliant on social workers to assist him. On or about June 3, 2022, Ms. M. Tyson, the Social Services supervisor, has "directed staff to only assist [him with filing grievances] once a week." (*Id.*) Plaintiff further contends that social workers do not provide him with receipts for his grievances and incorrectly tell him that entire form should be placed in the box. (*Id.*)

The Court construes Plaintiff to allege that Tyson and the unidentified social workers have violated his rights under § 1983. Prisoners, however, do not have a constitutionally protected right to prison grievance procedures. *Speight v. Sims*, 283 F. App'x 880 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). As such, Plaintiff's civil rights claims arising from the denial of an adequate grievance system fails to state a claim for relief and is dismissed with prejudice on that basis.

In Claim Two, Plaintiff alleges that he passed out in the recreation yard on July 29, 2022, and was taken to University Hospital. (*Id.* at 18.) The following day at 2 pm, Plaintiff was discharged in a regular transport van rather than a medical transport or an ambulance despite the fact that he is blind and wheelchair-bound. (*Id.*) Plaintiff alleges that Lt. Davis was the custody supervisor who ordered four corrections officers to pick Plaintiff up and put him in the NJDOC van despite Plaintiff's "protestations" and his requests for a medical van or ambulance. (*Id*; *see also id.* at 7.)

One of the corrections officers who forced him into the van was Officer Fernandez. (*Id*; *see also id.* at 8.) The other corrections officers are identified as John Does 1-3. (*See id*; *see also id.* at 8-9.) Fernandez and John Does 1-3 pushed Plaintiff to the ground and Plaintiff fell

3

partially under the van. (*Id.* at 18.) Plaintiff knocked his head on the ground, and the officers allegedly assaulted Plaintiff by shoving him into the van and slamming him into the doorframe, causing injuries to his head, arm, shoulder, and right hip. (*Id.*) The corrections officers also allegedly did not strap Plaintiff in, and the driver of the van drove erratically, which caused Plaintiff to fall to the ground and roll around the van. (*Id.*) Plaintiff was not "medically evaluated" when he returned to Northern State Prison. (*Id.*)

The Court construes Plaintiff to allege that Lt. Davis acted with deliberate indifference to Plaintiff's serious medical needs or need for medical transport and that Officer Fernandez and John Does 1-3 used excessive force in forcing Plaintiff into the van. The Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A prison official acts with deliberate indifference if he recklessly disregards "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). In addition, a supervisor may be liable under § 1983 where directed his subordinates to violate a plaintiff's constitutional rights, participated in the violation, or had knowledge of and acquiesced in the subordinates' violation. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) ("[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."). At this early stage, the Court proceeds an Eighth Amendment claim against Lt. Davis for deliberate indifference to Plaintiff's serious medical needs. The Court also proceeds Eighth Amendment claims against Lt. Officer Fernandez and John Does 1-3 for forcing Plaintiff into the van, using excessive force in the the process, and failing to secure him in the van.

4

In Claim Three, Plaintiff alleges that "Nurse Tiffany Johnson walked away from [him] and refused to provide [him] the rest of his eyedrops and other medications" on August 16, 2022. (Complaint at 18; *id.* at 14.) After Plaintiff told Nurse Johnson she was unprofessional, Officer Vasquez told Plaintiff to go inside his cell, which Plaintiff refused to do. (*Id.*) Officer Vasquez called for a supervisor, Sgt. Williams, who told Plaintiff to "lock in" but Plaintiff refused to do so because he wanted his medication. (*Id.*) He told Sgt. Williams his eyes hurt and that he was in pain. (*Id.*) Sgt. Williams started swinging at Plaintiff and told Officer Vasquez that Plaintiff should have been cuffed. (*Id.*) Sgt. Williams and Officer Vasquez grabbed the bottom of Plaintiff's wheelchair and flipped Plaintiff to the ground, causing Plaintiff to hit his head and become trapped by the wheelchair. (*Id*; *see id.* at 10.)

A Code 33 was called and the responding officers almost broke Plaintiff's arm trying to cuff him and cut off his circulation to his hands with the handcuffs, causing him nerve pain. (*Id.* at 19.) The leg restraints also cut off his circulation. (*Id.*) There were 10 officers on top of Plaintiff in his cell, and Plaintiff identifies these officers and John Does 4-13. (*Id.* at 10-13.) Plaintiff was taken to medical but he was only evaluated by a psychiatrist. (*Id.* at 19.)

In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Based on the allegations in Claim Three, the Court proceeds an Eighth Amendment claims for excessive force against Williams, Vasquez, and John Does 4-10.

The Court, however, dismisses Plaintiff's claim for deliberate indifference against Nurse Johnson for failure to state a claim for relief. To allege a claim for inadequate medical care under § 1983, a plaintiff must make (1) a subjective showing that "the defendants were deliberately

5

indifferent to [his or her] medical needs" and (2) an objective showing that "those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). Deliberate indifference includes "intentionally denying or delaying medical care." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Id.* (quoting Farmer, 511 U.S. at 843). Here, Plaintiff states only that Nurse Johnson refused to provide his eye drops and other medications on a single occasion, which he describes as unprofessional, but he does not allege whether he uses the eye drops or other medications for a serious medical need or whether he faced a serious risk of harm due to Nurse Johnson's actions. For these reasons, the Court dismisses without prejudice the deliberate indifference claim as to Nurse Johnson. To the extent Plaintiff alleges that he was denied medical care after the assault, that claim is also dismissed without prejudice because Plaintiff does not provide any facts identifying which of the Defendants, if any, denied him adequate medical care after the assault.

In Claim Four, Plaintiff contends that he has been denied access to the law library because he is in the RHU (restricted housing unit). (Complaint at 19.) Earlier in the Complaint, Plaintiff alleges that Ms. T. Hill, the supervisor of education denied Plaintiff access to the courts and to the law library. (*Id.* at 6.) Prisoners maintain a "fundamental constitutional right of access to the courts," embodied in the First and Fourteenth Amendments. *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Nevertheless, "a prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. at 350). Here, however, Plaintiff has not shown that he

6

suffered an actual injury resulting from his inability to access the prison library. As such, the Court dismisses without prejudice Plaintiff's claims based on denial of access to the courts.

In Claim 5, Plaintiff alleges that he was outside his cell waiting for his medication on October 25, 2022, when Sgt. Ramos told the unit officer that Plaintiff should be in handcuffs. Plaintiff refused to lock in because he needed his medication and was assaulted by Sgt. Ramos, and Officers C. Brooks, Dean, and A. Martinez. (Complaint at 20; *see also id.* at 15-16.) Plaintiff provides no other facts about this "assault." Plaintiff appears to assert an Eighth Amendment claim for excessive force against Defendants Ramos, Brooks, Dean, and A. Martinez. Plaintiff, however, has not provided sufficient facts about the alleged "assault" from which the Court can determine whether these Defendants applied force in good faith or acted maliciously or sadistically with the purpose of causing harm. The Court dismisses without prejudice the Eighth Amendment excessive force claims arising from the assault on October 22, 2022, for failure to state a claim as to Defendants Ramos, Brooks, Dean, and A. Martinez.

In Claim Six, Plaintiff contends that on November 1, 2022, Mr. Marc Sim, an associate administrator at NSP, directed staff to place a notice on Plaintiff's door indicating that his phone privileges had been revoked for 30 days. (*Id.* at 20; *see id.* at 5.) Plaintiff alleges that Mr. Sim took his phone privileges for breaking a phone, but Plaintiff was not found guilty of those charges. (*Id.* at 20.) Plaintiff appears to allege that this revocation of his phone privileges violated his due process rights. The protections of the Due Process Clause apply only if there is a deprivation of a protected interest in life, liberty, or property. *See Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir.2003). Plaintiff, however, has no protected interest in his phone privileges, *McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (dismissing due process claim of inmate who claimed that, as a result of the disciplinary proceeding, he was sanctioned to a 90–day

7

suspension of his telephone privileges and the loss of his institutional employment, as inmate had no protected interest in either one). This is fatal to his due-process claim, *see Mitchell*, 318 F.3d at 531, and the Court dismisses Plaintiff's due process claim premised on the loss of phone privileges for failure to state a claim for relief.

In Claim Seven, Plaintiff contends that on November 5, 2022, Mr. Sim told Plaintiff he would not be getting his visual medical device because Plaintiff made multiple complaints about threats and harassment by Mr. Sim. Mr. Sim sent Lt. Meyer and Lt. Holder to Plaintiff's cell several times to threaten him. Plaintiff also alleges that Mr. Sim's misconduct was racially motivated because Mr. Sim told Plaintiff he was "the most annoying black I ever met" and told Plaintiff "keep filing complaints against me." (*Id.*)

In Claim Eight, Plaintiff alleges that Lt. Myers told Plaintiff on December 14, 2022, that he "would not make it out of his prison alive." (*Id.*) Myers also told Plaintiff he would not get his visual medical device due to his complaints. (*Id.*) Lt. Myers has told Plaintiff that he will "burn in hell" due to Plaintiff's race as a Muslim black man. (*Id.*) Lt. Myers has also directed staff to fabricate disciplinary charges against him, assault him, and not assist him in any way. (*Id*; *see also id.* at 5.)

The Court construes Plaintiff to allege that Sim and Myers denied Plaintiff a visual medical device in retaliation for his filing of grievances or complaints. To plead a First Amendment retaliation claim a plaintiff must plead that "(1) his conduct was constitutionally protected, (2) he suffered an adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor" in the officials' decisions. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). A prisoner's filing of grievances or complaints is protected conduct.

8

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Here, Plaintiff sufficiently alleges that Defendant Sims and Lt. Myers denied him a visual medical device due to his filing of grievances, and the Court proceeds the First Amendment retaliation claim against Defendant Sims and Lt. Myers.

Plaintiff also alleges that Sim and Myers used racial epithets against him and may be attempting to assert an equal protection claim against these individuals.[1] The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious discrimination based on race. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state an equal protection claim, a plaintiff must first show that he has been treated differently from similarly situated individuals. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Here, Plaintiff does not provide any facts to suggest that he was treated differently from other similarly-situated individuals, and the Court dismisses without prejudice the equal protection claim against Sim and Myers for failure to state a claim for relief.

In Claim Nine, Plaintiff contends that on December 14, 2022, Sergeant Seguine and another corrections officer threw Plaintiff to the ground. (*Id.* at 21.) Plaintiff needed a stretcher and medical attention, and Seguine covered up the assault by fabricating charges against Plaintiff. (*Id.*) Plaintiff needed pain medication and had a bruised hip from the assault. Sgt. Seguine told Plaintiff he was not finished with him yet and that he would be his "worst nightmare," leaving Plaintiff to fear for his safety. Because there are sufficient facts to suggest

---

[1] The Court does not construe Plaintiff to raise an Eighth Amendment claim based on this alleged verbal harassment, as "[i]t is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment." *Robinson v. Taylor*, 204 F. App'x. 155, 156 (3d Cir. 2006).

9

that Sergeant Sequine violated the Eighth Amendment in throwing Plaintiff to the ground, the Court proceeds an excessive force claim against him.

In Claim Ten, Plaintiff alleges that on January 5, 2023, he passed out due to medical reasons by his cell door and was holding his chest because he was having chest pains. (*Id.*) Lt. Holder and Sgt. Bleker saw Plaintiff on the ground and starting laughing, and Lt Holder stated that Plaintiff was "just laying on the ground resting." (*Id.*) Officer McKelvin stated to another officer to close the door because he didn't want to do the paperwork. (*Id.*) The officers called a medical code only after other inmates started yelling for them to help Plaintiff. (*Id; see id.* at 14-15.) Sgt. Bleker sprayed Plaintiff in his nose with NARCAN, and Plaintiff was on the floor for over an hour before medical came and the nurses yelled at the officers for how they treated Plaintiff. (*Id.* at 21.) At the medical department, plaintiff was told his blood sugar and blood pressure were high, and he was given insulin. (*Id.*) Plaintiff sufficiently alleges deliberate indifference to his serious medical needs by Lt. Holder, Sgt. Bleker, and Officer McKelvin, and these claims shall proceed.

Finally, Plaintiff has also sued Victoria L. Kuhn and Patricia McGill because these administrators are responsible for all staff and NSP and because they failed to prevent the violations of Plaintiff's constitutional rights. (*Id.* at 4.) He further alleges that Ms. Lesley Russell denied Plaintiff's due process rights. (*Id.* at 6.) Liability under 42 U.S.C. § 1983 requires personal involvement in the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff does not provide sufficient facts showing that these Defendants were personally involved in any constitutional violations, and the Court dismisses without prejudice the § 1983 claims against them for failure to state a claim for relief.

### b. Claims Under the ADA and RA

In Claim Four, Plaintiff alleges that his cell is not ADA compliant and that he should be housed in an infirmary. (*Id.* at 19.) Plaintiff alleges that he has requested to be transferred to NJSP or other adequate facility to accommodate his disabilities. Plaintiff has also allegedly requested an ADA speaking pen, and ADA desktop scanner, braille lessons, and entry into rehabilitation programs, but these requests have all been denied. (*Id.*) In addition, Plaintiff contends he is being denied a medical mattress, knee, ankle, and back braces, and diabetic boots and sneakers. He has daily eye pain, headaches, pain in his shoulders, hands, back, and foot due to arthritis throughout his body. Plaintiff alleges he is legally blind and in a wheelchair, and also has asthma. (*Id.* at 19.) Plaintiff seeks a medical device for visual aide, to be transferred to another prison that has a medical wing, legal assistance in the law library and assistance by social workers. (*Id.* at 16.)

The Court construes Plaintiff to raise claims under the RA and the ADA. As explained by the Third Circuit in *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023) (citations omitted),

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." Thus, to state a claim under Title II of the ADA, plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability. Where compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard. The elements of a claim under the RA are the same, except that the plaintiff must also show that the program in question received federal dollars.[2]

---

[2] The Court assumes for purposes of screening that this element is met.

*Id.* It is well-established that "the phrase 'service, program, or activity' under Title II and the phrase "'program or activity'" under Section 504 are "extremely broad in scope and include[] anything a public entity does." *Furgess v. Pennsylvania Department of Corrections*, 933 F.3d 285, 289 (3d Cir. 2019); *see also Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational "activities," medical "services," and educational and vocational "programs," all of which at least theoretically "benefit" the prisoners (and any of which disabled prisoners could be "excluded from participation in")."). As such, "a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitutes a denial of the benefits of a prison's services, programs, or activities under Title II" of the ADA. *Furgess*, 933 F.3d at 290. Moreover, the Third Circuit has held that "[r]efusing to make reasonable accommodations is tantamount to denying access." *Durham*, 82 F.4th at 226.

Claims brought under the ADA and RA may only proceed against specific officials and entities. State officials sued in their individual capacities cannot be sued under Title II of the ADA or the RA. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002); *Matthews v. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015)). Federal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex parte Young* doctrine. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002). ADA lawsuits against state entities are barred by sovereign immunity, except where a plaintiff successfully alleges constitutional violations arising from the same conduct. *Durham*, 82 F.4th at 228-29; however, sovereign immunity does not bar suit against state entities under the Rehabilitation Act. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 172 (3d Cir. 2002) (quoting *Lane v. Pena*, 518

U.S. 187, 200 (1996) ("The Supreme Court has recognized § 504 [of the Rehabilitation Act] ... to be 'an unambiguous waiver of the State's Eleventh Amendment immunity.'")).

Plaintiff has pleaded sufficient facts at the screening stage showing that he is a qualified individual with a disability and also pleads sufficient facts showing that he has been denied a public service, i.e., meaningful access to the prison library services and prison grievance system, entry into rehabilitation programs, and access to medical care and/or devices for his disabilities. At this early stage, the Court proceeds Plaintiff's RA claims against the New Jersey Department of Corrections. The Court also proceeds the ADA claim against the NJDOC arising from the denial of Plaintiff's visual medical device because Plaintiff pleads a constitutional violation arising from the same facts. The Court dismisses without prejudice the remaining ADA claims against the NJDOC.

The Court notes that Plaintiff was recently transferred to South Woods State Prison, and thus, his ADA and RA claims for injunctive relief may be moot. The Court declines to dismiss these claims prior to the filing of a responsive pleading, and will permit the claims for injunctive relief to proceed against Kuhn, McGill, Sim, Tyson, and Hill in their official capacities, as these individuals could potentially provide the injunctive relief Plaintiff seeks.[3] The Court otherwise dismisses the individual capacity ADA and RA claims.

---

[3] Plaintiff's Complaint does not explicitly ask for monetary damages. To make out a money damages claim, plaintiff must allege intentional discrimination, which requires a showing of deliberate indifference. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019). That showing is made by alleging that (1) Defendant "had knowledge that a federally protected right is substantially likely to be violated," and (2) Defendant "failed to act despite that knowledge." *Id.* at 292.

### c. Plaintiff's Pro Bono Counsel Motion and the New Allegations in his Letter

Plaintiff seeks pro bono counsel in this action. Civil litigants do not have a constitutional or statutory right to appointed counsel. *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Section 1915(e)(1) provides, however, that "[t]he court may request an attorney to represent any person unable to employ counsel." *See Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997). Whether a district court chooses to request counsel depends on several factors, including: 1) the plaintiff's ability to present his or her own case; 2) the difficulty of the particular legal issues; 3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; 4) the plaintiff's capacity to retain counsel on his or her own behalf; 5) the extent to which a case is likely to turn on credibility determinations; and 6) whether the case will require testimony from expert witnesses. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Tabron*, 6 F.3d at 155–57).

With his original complaint, Plaintiff submitted a motion for pro bono counsel and alleged that he is legally blind, housed in administrative segregation, and does not have access to law library paralegals who are limited to assisting prisoners with their initial filings. Plaintiff has since been transferred to South Woods State Prison, and it is not clear if his circumstances, particularly his housing assignment and access to the assistance of prison paralegals, has changed. Thus, the Court is unable to determine whether Plaintiff is able to present his case. At this early stage, the legal issues do not appear particularly complex. It is too early to determine whether the case requires significant factual development or whether the outcome will turn on credibility determinations or expert testimony. Because the *Tabron* factors currently do not favor appointment of counsel, the Court will deny without prejudice the motion for pro bono counsel at this time, subject to renewal as explained below.

14

Plaintiff also submitted a letter contending that he was transferred for filing grievances and that his legal materials were confiscated. He asks for a court order directing the NJDOC to return his legal materials. To the extent Plaintiff alleges that unnamed prison officials retaliated against him by transferring him and depriving him of his property, the Court declines to treat his letter as an amended or supplemental complaint and denies without prejudice his request for a court order. If Plaintiff wishes to amend his Complaint to add related claims or believes he can cure the deficiencies in his original claims that the Court has dismissed without prejudice, he may file an amended complaint within 45 days.

Within 30 days, Plaintiff must either complete USM forms for serving the NJDOC, Lt. Davis, Officer Fernandez, Sergeant Williams, Officer Vasquez, Lt. Myers, Sergeant Seguine, Lt. Holder, Sergeant Bleker, Officer McKelvin, Administrator Kuhn, Administrator McGill, Administrator Sim, Ms. Tyson, and Ms. Hill or submit an amended complaint. To proceed, Plaintiff must elect one option and may not do both. If Plaintiff submits an amended complaint, it will supersede his original complaint. If Plaintiff believes his disabilities prevent him from completing the USM forms or amending his complaint, he may submit a new motion for pro bono counsel within 30 days, explaining in detail why he needs appointment of counsel. The Court will administratively terminate this matter for docket management purposes until Plaintiff responds to the Order accompanying this Memorandum Opinion. An appropriate Order follows.

Nov. 6 2024

Hon. Madeline Cox Arleo, District
United States District Judge